***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence and therefore the Full Commission affirms with some modifications the prior Opinion and Award.
 ***********
The following exhibits were received into evidence at the Deputy Commissioner's hearing:
1. Defendants' Exhibits 1 A — C — three volumes of bank records;
2. Defendants' Exhibit 2 and 3 — Industrial Commission forms, medical records, discovery responses for plaintiff and Gustavo Vega;
3. Defendants' Exhibit 4 — miscellaneous records from Ronald's Painting;
4. Defendants' Exhibits 5 — 17 — videotapes;
5. Defendants' Exhibit 18 — records from Porter Paints;
6. Defendants' Exhibit 19 — bank records;
7. Defendants' Exhibit 20 — statement by Tammy Laney;
8. Defendants' Exhibit 21 — investigation summary;
9. Defendants' Exhibit 22 — recorded statement;
10. Defendants' Exhibit 23 — check from Southpark Painting to plaintiff;
11. Defendants' Exhibit 24 — Fenix Renovations bank records;
12. Defendants' Exhibit 25 and 26 — Forms 22 for plaintiff and Gustavo Vega.
 ***********
Based upon all of the competent evidence in the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. In April 2002 plaintiff was a self-employed painting contractor. He performed work for individuals as well as subcontracted jobs from other painting contractors. When painting for individual customers, he used the business name "Ronald's Painting." Although plaintiff did not always deposit payments for jobs in his business bank account, he did have a separate bank account for Ronald's Painting.
2. Sometime prior to April 25, 2002, Gus Lee Kerlin of South Park Painting contacted plaintiff about subcontracting a job from him. The job involved painting the home of David and Jennifer Reed at 9500 Goldsmith Lane in Mint Hill, North Carolina. Plaintiff agreed to take the job, and on April 25, 2002, he went to the house along with three painters in his employ, and they painted the exterior of the house. South Park Painting paid plaintiff $2,500.00 for the Reed house job on or about May 7, 2002.
3. At some point while they were performing the painting job on April 25, 2002, plaintiff and his cousin, Gustavo Vega, tried to move an aluminum extension ladder along the side of the Reed house. The wind caught the ladder, pushing it against a high voltage wire. Both plaintiff and Mr. Vega sustained a severe but not fatal electrical shock.
4. As a result of the accident, plaintiff sustained fourth degree burns to his right foot and third degree burns to his left lower leg. Plaintiff and Mr. Vega were transported to the Jaycee Burn Center at UNC Hospital in Chapel Hill. Plaintiff was evaluated and then taken to the operating room where Dr. Scott Hultman excised and debrided the burned tissue. He underwent several more procedures to remove necrotic tissue, to amputate his right big toe, to graft skin over the wound and to create a fillet flap for the amputated toe.
5. On July 7, 2003, Dr. Hultman released plaintifif to return to work full heavy duty eight hours a day with permanent partial disability ratings of 25% to his right foot and 8% to his left leg.
6. On September 25, 2003, Dr. Maher Habashi rendered a second opinion on the ratings and assigned a 15% rating to plaintiff's left leg and a 35% rating to his right foot.
7. In June 2002 plaintiff began working on a part-time basis as a painting contractor.
8. Although Fenix Renovations had no involvement with the job where plaintiff was injured and although plaintiff was not employed by that company, Armando Ortiz, the owner of Fenix Renovations, filed a Form 19 with his insurance company, Security Insurance Company of Hartford, carrier-defendant herein, regarding plaintiff's injury. He stated on the employer's report of injury that plaintiff had been employed by Fenix Renovations for two weeks and that Mr. Ortiz was plaintiff's supervisor as of the date of injury. The form was signed by Mr. Ortiz on May 1, 2002.
9. Defendant-carrier then contracted with Crawford Company to investigate the claim. Stephanie Hudson, an adjuster with Crawford 
Company, took a recorded statement from plaintiff. Plaintiff stated that South Park Painting hired Fenix Renovations as a subcontractor for the Reed house job and that he and Mr. Vega were hired by Armando Ortiz of Fenix Renovations to do the job. Plaintiff also advised Ms. Hudson that he was paid by Fenix Renovations for two weeks of work. In addition to the statement from plaintiff, Form 22 wage charts for both plaintiff and Mr. Vega were provided by Mr. Ortiz, showing that they had worked for two weeks for his company.
10. Based upon the information provided by plaintiff and Mr. Ortiz, defendant-carrier filed a Form 63 and began paying workers' compensation benefits without prejudice based on an average weekly wage of $400.00 yielding a compensation rate of $266.68. In June 2002 plaintiff, through counsel, filed a Form 18 notice of injury which showed Fenix Renovations as his employer on the date of his injury. Having no information to the contrary, defendant-carrier did not deny liability for the claim within the ninety days allowed by statute and therefore admitted liability for the injury and paid temporary total disability compensation to plaintiff.
11. On the back of the checks for temporary total disability sent to plaintiff was the statement:
 "By endorsing this check, I certify that I have not worked for or earned wages from any business or individual during the period covered by this check, or that I have reported any earning to the employer/carrier paying me workers' compensation benefits. I understand that making a false statement by endorsing this benefit check may result in civil or criminal penalties."
12. Since Dr. Peck continued to restrict plaintiff from climbing ladders despite the otherwise full work release and since plaintiff represented that he was still unable to work as a painter, defendant-carrier through its servicing agent continued to pay compensation to plaintiff for temporary total disability. However, plaintiff operated his paint contracting business on a part-time basis in July and August 2002 and by September 2002 was fully employed. He remained fully employed, even through the next spring when he had to undergo further surgery to his foot. Nevertheless, plaintiff continued to receive and sign the workers' compensation checks without reporting to defendant-carrier that he had returned to work.
13. In August 2003 defendant-carrier hired Advantage Surveillance, Inc., to conduct surveillance on Mr. Vega, who was also continuing to receive compensation for total disability. While observing Mr. Vega, the investigator also filmed plaintiff performing work. Consequently, the company was then hired to conduct surveillance on plaintiff, since it was clear from plaintiff's observed activities that he was not only capable of working, but that he was actually employed and operating a business.
14. Defendant-carrier then submitted to plaintiff's former counsel a Form 90 Report of Earnings which was subsequently completed and signed by plaintiff on October 24, 2003. Plaintiff denied working or earning wages at any time between the date of injury and October 13, 2003. Defendant-carrier subsequently filed a Form 24 Application to stop payment of compensation to plaintiff. In compliance with the law, defendant-carrier continued to pay compensation to plaintiff through January 7, 2004, until the Form 24 was approved by the Industrial Commission.
15. Through discovery, defendant-carrier subsequently obtained bank records for Fenix Renovations, for plaintiff individually, as well as for his company, Ronald's Painting, and for Mr. Vega. The bank records showed that Fenix Renovations never paid wages to plaintiff or to Mr. Vega and that plaintiff was operating his own business at the time of the accident. There was a check from South Park Painting directly to plaintiff which appeared to be payment for the job on which the injury occurred. Further investigation led to questioning of Gus Kerlin of South Park Painting who confirmed that Fenix Renovations was not hired to do the job in question but that plaintiff was hired directly. Consequently, at the Deputy Commissioner's hearing, the defendant-carrier moved that the Form 63 be set aside.
16. Prior to defendant-carrier's admission of liability for this claim, both plaintiff and Mr. Ortiz, the owner of Fenix Renovations, made false representations to the claims adjuster that plaintiff and Mr. Vega were employed by Fenix Renovations at the time of the accident in question. Plaintiff and Mr. Ortiz knew that these representations were false but made them with the intent that defendant-carrier would pay workers' compensation benefits in these claims. Plaintiff also filed a Form 18 showing Fenix Renovations as his employer and therefore also misrepresented his employment to defendant-carrier and to the Industrial Commission. This misrepresentation was made within the ninety-day period during which the carrier could have denied the claim. Consequently, there was error due to fraud and misrepresentation which led to payment of workers' compensation benefits in this case. The representation was made under circumstances such that plaintiff would have known that it was false. It was clear that the intent of the misrepresentation was so that plaintiff could receive workers' compensation benefits.
17. Plaintiff also knowingly misrepresented his disability after he returned to work in June 2002. However, if plaintiff had disclosed his return to work, this information would not have prevented defendant-carrier from entering into the Form 63.
18. Plaintiff willfully made false statements and misrepresentations of material facts for purposes of obtaining workers' compensation benefits under the Workers' Compensation Act and therefore defendant-carrier is entitled to restitution in the following amounts as shown in the sworn affidavits of attorneys Matthew P. Blake and Todd A. Jones: $23,734.52 indemnity compensation, $64,910.82 medical expenses, $12,416.64 case management expenses, $9,090.65 claims investigation and surveillance expenses, and $32,760.92 in attorney's fees, for a total of $142,913.55.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At the time of the injury by accident giving rise to this claim, plaintiff was not employed by Fenix Renovations and was therefore not entitled to workers' compensation benefits from defendant-carrier, the workers' compensation carrier for Fenix Renovations. N.C. Gen. Stat. §97-2.
2. Defendants' admission of liability pursuant to an uncontested Form 63 which was filed in this case was the result of misrepresentations and fraud by plaintiff and Armando Ortiz, the owner of Fenix Renovations. Consequently, defendant-carrier is entitled to have the Form 63 set aside. N.C. Gen. Stat. §§ 97-17; 97-18; 97-82(b); Johnson v. InsuranceCo., 300 N.C. 247, 266 S.E.2d 610 (1980).
3. None of the workers' compensation benefits paid in this case, including the payments for medical treatment, were due. Defendant-carrier has no further liability. N.C. Gen. Stat. § 97-2 et seq.
4. Defendant-carrier is entitled to have plaintiff reimburse defendant-carrier for all medical and indemnity compensation paid for plaintiff's injuries and the entire costs of the proceedings including attorney's fees, in the total amount of $142,913.55. N.C. Gen. Stat. §97-88.2(b)(3).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The Form 63 filed in this case is hereby SET ASIDE due to fraud and misrepresentation. Defendant-carrier shall have no further liability for this claim.
2. Plaintiff shall pay restitution to defendant-carrier in the amount of $142,913.55.
3. This case shall be referred to the Fraud Investigations Section of the Industrial Commission for further action.
4. Plaintiff shall pay the costs.
This 15th day of July, 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER